# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VICKEY L. DAMATO, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-260-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Vickey L. Damato requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 23, 1956, and was fifty-one years old at the time of the administrative hearing. She has a high school education and previously worked as a receptionist, dental assistant, and director at the chamber of commerce. The claimant alleges she has been unable to work since May 25, 2001, because of degenerative disc disease of the lumbar spine status post surgery, hypertensive heart disease, hyperthyroidism, hyperglycemia, edema, obesity, carpal tunnel syndrome, and depression.

### Procedural History

On February 13, 2006, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, which application was denied. ALJ Lantz McClain conducted a hearing and determined the claimant was not disabled on October 18, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of sedentary work, *i. e.*, that she could lift and/or carry ten pounds; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 21). The

ALJ concluded that the claimant was not disabled because she could perform her past relevant work as a receptionist and chamber of commerce director as they were generally performed in the national economy (Tr. 24).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly weigh the opinion of her treating physician Dr. Robert Williams, D.O.; and, (ii) by finding she had the RFC to perform significant gainful activity. The Court finds the claimant's first contention persuasive.

The claimant testified that she began seeing Dr. Williams as early as 1980-81 (Tr. 35). More recent treatment records from June 2001 reveal that the claimant was three weeks post lumbar laminectomy, reported some pain in her back, and was suffering from edema in the lower extremities (Tr. 322). By August 2001, the claimant was still having low back pain. Dr. Williams diagnosed the claimant with lumbar disc disease with post operative pain and indicated the claimant needed to start weaning herself off her pain medication (Tr. 316). In December 2001, the claimant was reportedly receiving pain injections for her back pain. She was assessed with hypertension and lumbar disc disease with chronic low back pain (Tr. 305). The claimant complained of low back pain radiating into both legs in July 2002. She was assessed with lumbar disc disease with radicular low back pain (Tr. 292). She was noted to suffer from chronic pain in November 2004 (Tr. 270). She was assessed with lumbar disc disease in December 2006 and continued to take pain medicine (Tr. 403). Dr. Williams noted the claimant's low back was tender on several occasions between December 2006 and

-4-

July 2007 (Tr. 397-99, 401-03 ). She also suffered from right hip pain in June 2007 (Tr. 398).

Dr. Williams completed a physical medical source statement for the claimant in June 2007. He determined the claimant could lift and/or carry less than ten pounds frequently and ten pounds occasionally. She could stand and/or walk for a total of one hour in an eight-hour workday and sit for less than one hour. The claimant needed to lie down during the workday, and her ability to push and/or pull was limited with better upper extremity strength than lower. She could occasionally balance, kneel, crouch, reach, finger and feel, but never climb, stoop, and crawl. The claimant could not tolerate heat because it caused excessive sweating. Dr. Williams described the claimant's care as treatment for pain management and epidural steroid injections (Tr. 395-96).

The ALJ summarized Dr. Williams's findings from the physical medical source statement and discussed the requirements for assigning controlling weight to a medical opinion. He then determined that Dr. Williams's opinions were entitled to "little weight" because: (i) they "[were] not entirely consistent with the record[;]" and, (ii) Dr. Williams "did not provide a diagnosis or any other specific findings to support his extreme restrictions." (Tr. 23-24). However, the ALJ's evaluation of the opinion evidence from Dr. Williams was deficient for two reasons.

First, the ALJ failed to perform an appropriate controlling-weight analysis of Dr. Williams's opinions. Although he indicated that Dr. Williams provided no diagnosis to support his extreme restrictions, he also determined Dr. Williams's opinions were entitled

to "little weight" because they were inconsistent with the rest of the medical record. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that medical opinions from a claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). However, aside from making a reference to the claimant's testimony from the administrative hearing, the ALJ failed to specify any of the inconsistencies he found with the medical evidence. *See id*. at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. *See also Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted] [unpublished opinion].[2]

Second, even if Dr. Williams's opinions were not entitled to controlling weight, the ALJ was required to analyze the proper weight to give them. *See Langley*, 373 F.3d at 1119

---

[2] In the decision, the ALJ notes that Dr. Williams determined the claimant could sit, stand and/or walk a total of two hours in an eight-hour workday, and he contends that the claimant's testimony did not support Dr. Williams's findings (Tr. 24). The claimant's testimony, however, is not contrary to Dr. Williams's determination. The claimant testified she could sit for 30 minutes before needing to stand up or lie down, stand for 15 minutes before needing to lie down, and walk for 15-20 minutes before needing to lie down. She testified she had to lie down two or three times per day for up to an hour and a half each time (Tr. 38-40).

("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must . . . consider a series of specific factors in determining what weight to give any medical opinion.") [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). In particular, the ALJ was required to discuss the factors set forth in 20 C.F.R. § 404.1527: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). With the exception of recognizing Dr. Williams as the claimant's treating physician and finding his opinion inconsistent (which was done in error as determined by the Court above), the ALJ failed to specifically address any of the remaining factors.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of Dr. Williams's opinions. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then

redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 31st day of August, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**